UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/18/09
```

------------------------------------------x
                                :

NML CAPITAL, LTD.,               :

                     Plaintiff,    :      05 Civ. 2434 (TPG)
                                  :      06 Civ. 6466 (TPG)
     – against –          :      07 Civ. 2690 (TPG)

THE REPUBLIC OF ARGENTINA,  :     **OPINION**

                    Defendant.  :

------------------------------------------x

FFI FUND, LTD. and FYI LTD.,  :

                   Plaintiffs,  :      05 Civ. 3328 (TPG)

     – against –          :

THE REPUBLIC OF ARGENTINA,  :

                    Defendant.  :

------------------------------------------x

MONTREUX PARTNERS, L.P.,  :

                   Plaintiff,    :      05 Civ. 4239 (TPG)

     – against –          :

THE REPUBLIC OF ARGENTINA,  :

                    Defendant.  :

------------------------------------------x

```
-------------------------------------------x
                                           :
LOS ANGELES CAPITAL,                       :
                                           :    05 Civ. 10201 (TPG)
                     Plaintiff,            :    07 Civ. 2349 (TPG)
                                           :
        – against –                        :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                     Defendant.            :
                                           :
-------------------------------------------x
                                           :
CORDOBA CAPITAL,                           :
                                           :    06 Civ. 5887 (TPG)
                     Plaintiff,            :
                                           :
        – against –                        :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                     Defendant.            :
                                           :
-------------------------------------------x
                                           :
WILTON CAPITAL, LTD.,                      :
                                           :    07 Civ. 1797 (TPG)
                     Plaintiff,            :
                                           :
        – against –                        :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                     Defendant.            :
                                           :
-------------------------------------------x
```

Plaintiffs in nine bondholder actions against the Republic of
Argentina move for partial summary judgment as to the amount of
interest owed by the Republic on securities known as "Floating Rate

Accrual Notes" ("FRANs").  Because this issue is common to these nine

actions, the plaintiffs have made joint submissions regarding this

question.  The court previously granted summary judgment to the

plaintiffs in all nine cases on the amount of principal owed to them, but

the parties dispute the amount of interest to which plaintiffs are entitled.

The motion raises two issues.  The first is whether the

contractual interest rate, calculated according to the procedure provided

for in the FRANs, should be awarded.  The second is whether, in

connection with bonds where the payment of principal has been

accelerated (apparently in only one of the nine cases), plaintiffs are

entitled to statutory prejudgment interest on unpaid contract interest

that accrued after such acceleration.  The court rules that plaintiffs are

entitled to receive interest at the contractual rate.  However, there is no

right to receive statutory interest on unpaid contract interest accruing

after acceleration.  The motion is therefore granted in part and denied in

part.

## **Background**

The Republic issued the FRANs on April 13, 1998, and initially

made the payments required by the notes.  In December 2001, however,

the Republic declared a moratorium on payments of all external debts,

including the FRANs, and has since refused to pay interest or principal

on the FRANs.

The FRANs are governed by terms set forth in several documents: the Fiscal Agency Agreement, the Prospectus, a Prospectus Supplement, and the Global Security certificate. The terms of the FRANs required the Republic to pay their principal on April 10, 2005, as well as interest on the principal. In the event that the Republic did not pay the principal by that date, however, interest would continue to be due every six months "until the principal hereof is paid or made available for payment." Moreover, if the Republic defaulted or declared a moratorium on the payment of its debt, the holders of the FRANs could accelerate the due date of the payments by declaring the principal to be due and payable immediately. Certain FRAN holders accelerated payments under this provision.

The Prospectus Supplement and the Global Security certificate provide the same formula for calculating interest. That formula yields a variable interest rate, which is set every six months by a third party known as the "Determination Agent." The calculations of the Determination Agent are declared by the Prospectus Supplement to be "conclusive" except in the event of "manifest error." Specifically, the interest rate formula was based primarily on the "yields to maturity" of three reference bonds—two bonds issued by the Republic, and the most recently issued 30-year U.S. Treasury bond. Those bonds' yields to maturity fluctuated based on their market prices, which in turn indicated how risky investors perceived the bonds to be. When the

- 4 -

Republic's fixed-rate bonds were perceived to be riskier, either in absolute terms or relative to U.S. Treasury notes, the interest rate of the FRANs would be higher.  Thus, a higher interest rate would compensate FRAN investors for investing in riskier securities.

The Republic appointed Morgan Stanley as the Determination Agent, and Morgan Stanley determined the interest rate every six months, as required.  After the Republic's default in December 2001, the FRAN interest rate began to increase, consistent with the considerable risk associated with debt issued by a borrower who has declared a moratorium on future payments on that debt.  For instance, Morgan Stanley set an interest rate of 12.703% in October 2001, before the default, but in April 2002, it set an interest rate of 36.406%.  For the period from October 10, 2004, through April 10, 2005, Morgan Stanley set an interest rate of 50.526%.  All of these interest rates were set for a six-month period; thus, on an annualized basis, the most recent interest rate was 101.052%.

At no time before 2005 did the Republic challenge the rates set by Morgan Stanley.  After Morgan Stanley's appointment expired when the FRANs matured on April 10, 2005, however, the Republic did not renew Morgan Stanley's appointment or appoint another Determination Agent.  Instead, in June 2005, the Republic completed an exchange offer in which it offered discounted but performing debt to the holders of defaulted debt.  None of the FRAN holders accepted this offer, and the

Republic passed legislation to prevent the defaulted debt from ever being satisfied. The 101.052% annual rate, which was set by Morgan Stanley for the period ending April 10, 2005, therefore remains the governing rate.

The plaintiffs in these and numerous other actions brought suit against the Republic on the defaulted debt. Because there is no issue as to the Republic's liability for this debt, the court previously granted summary judgment to plaintiffs on the amount of principal owed to them. Summary judgment was granted in the <u>FFI Fund, Ltd. and FYI Ltd.</u> case (05-cv-3328) on February 22, 2006, in the <u>Montreux Partners L.P.</u> case (05-cv-4239) on January 31, 2006, in the <u>Cordoba Capital</u> case (06-cv-5587) on June 27, 2007, and in the <u>Wilton Capital</u> case (07-cv-1797) on April 4, 2008. In the <u>Los Angeles Capital</u> cases, summary judgment was granted on February 21, 2007 (in case 05-cv-10201), and on April 4, 2008 (in case 07-cv-2349). In the <u>NML Capital</u> cases, summary judgment was granted on May 10, 2006 (in case 05-cv-2434), on March 28, 2008 (in case 06-cv-6646), and on April 10, 2008 (in case 07-cv-2690).

The court has previously established procedures to expedite the entry of judgments in the Argentina bondholder actions. Pursuant to those procedures, counsel for the Montreux and NML plaintiffs submitted proposed judgments to the Republic's counsel. The Republic's counsel objected to the methods used by plaintiffs to calculate interest

on the FRANs, and therefore refused to agree to the entry of judgment.
These motions followed.

### Contractual Interest

There is no dispute as to the formula by which the FRAN interest
rates were to be calculated, or as to the fact that 101.052% is currently
the annual interest rate set by this formula.  Rather, the Republic
contends that the interest rate is too high to be enforced because (1) the
rate is an unreasonable penalty barred by New York law governing
liquidated damages clauses; (2) the rate is unconscionable; and (3) it
would violate public policy to enforce such a high rate.  Instead, the
Republic asks the court to reform the contract to reflect a 9% interest
rate.

Liquidated Damages

The Republic argues that the 101% interest rate is a liquidated
damages provision that sets an unreasonable and unenforceable interest
rate.  In support of this argument, the Republic cites cases where New
York courts have refused, for various reasons, to enforce liquidated
damages clauses and late fees in a loan agreement, a lease, and a
settlement agreement.  See JMD Holding Corp. v. Cong. Fin. Corp., 309
A.D.2d 645 (1st Dep't 2003); Sandra's Jewel Box Inc. v. 401 Hotel, L.P.,
273 A.D.2d 1 (1st Dep't 2000); Zervakis v. Kyreakedes, 257 A.D.2d 619
(2d Dep't 1999).

- 7 -

The sole purpose of liquidated damages clauses is to specify damages in the event of breach. "In effect, a liquidated damage provision is an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement." Truck Rent-a-Center, Inc. v. Puritan Farms 2d, Inc., 41 N.Y.2d 420, 423-24 (1977). Here, by contrast, the interest rate mechanism specified by the FRANs was employed to determine the Republic's obligations under the contract—not its obligations resulting from a breach. Thus, the FRAN interest rate provision is not a liquidated damages clause, and the cases cited by the Republic are therefore inapposite.

Unconscionability

The Republic argues that the 101% interest rate is unconscionable because the Republic never intended to offer such a high interest rate. Plaintiffs contend that this situation does not meet the criteria of unconscionability.

A determination of unconscionability generally requires a party to establish that a contract was both "procedurally" and "substantively" unconscionable. Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10 (1988). For a court to find a contract procedurally unconscionable, it must find a "lack of meaningful choice" arising from the contract formation process, in light of the circumstances of the transaction and the sophistication and bargaining power of the parties. Id. at 10-11. For

a court to find a contract substantively unconscionable, it must examine
"the substance of the bargain to determine whether the terms were
unreasonably favorable" to one party in light of "their commercial
context, their purpose, and their effect." Id. at 12. For both analyses,
courts are directed to examine unconscionability at the time the contract
was made, rather than considering events occurring after the contract's
formation. Id. at 10; Doctor's Assocs., Inc. v. Jabush, 89 F.3d 109, 113
(2d Cir. 1996).

There is no basis for a finding of procedural unconscionability
here. Not only did the Republic itself draft the FRANs' terms—giving the
Republic complete discretion in the contract formation process—the
Republic was a sophisticated party that should have been able to
appreciate the ramifications of the terms that it was proposing.
Unsurprisingly, the Republic does not truly contest this point. Rather,
the Republic attempts to classify the interest provision here as so
outrageous as to justify holding it unconscionable on substantive
grounds alone.

However, there is no basis for the court to hold the interest rate
provision to be substantively unconscionable. The interest rate
mechanism specified by the FRANs was reasonable at the time it was
drafted. It enabled the Republic to generate capital while assuring
investors that their returns would be proportionate to the
creditworthiness of the Republic. In this sense, the terms operated as

- 9 -

the parties expected.  If the Republic had wished to constrain the range of possible interest rates, or to ensure that the FRAN interest rate remained similar to the interest rates of other sovereign debt, it could have used a fixed-rate formula or imposed a maximum cap on the variable rate.

The Republic urges the court to consider events occurring after the formation of the contract—i.e., the 2001 default—in evaluating unconscionability.  However, such an analysis would be contrary to the weight of the case law, which requires that the contract be unconscionable "when made."  E.g., Gillman, 73 N.Y.2d at 10.  The two cases cited by the Republic for this argument are inapposite.  One case evaluated the enforceability of a disclaimer of warranties in a case where the product at issue completely failed to work, and the court in the other case declined to reach the unconscionability issue.  Industralease Automated & Sci. Equip. Corp. v. R.M.E., 58 A.D.2d 482 (2d Dep't 1977); Aluminum Co. of Am. v. Essex Group, Inc., 499 F. Supp. 53 (W.D. Pa. 1980).  Therefore, the fact that the Republic defaulted on its debt, causing the predictable result of increasing the FRAN interest rate, is irrelevant to the determination of unconscionability.

Moreover, the Republic's claim that, at the time it issued the FRANs, it could not have foreseen a default (and the resulting rise in interest rates) is unconvincing.  By the time it issued the FRANs, the Republic had already defaulted on its debts six times, three of which

were in the preceding two decades.  Although it may not have specifically envisioned another default, it surely appreciated that a default was possible, and that the terms of a variable-rate instrument like the FRANs should be drafted with such an eventuality in mind.  The Republic could have easily estimated the possible range of FRAN interest rates that could result from a default, and structured the interest rate formula to constrain the possible interest rates that Morgan Stanley could assess.

Finally, the bankruptcy case law cited by the Republic is not applicable to this case.  Unlike bankruptcy courts, which have significant power to reallocate debtors' assets to satisfy creditor claims, the court in this case is limited to enforcing the terms of the specific contracts before it.  In any event, the cases cited by the Republic apply to situations not relevant here.

Public Policy

The Republic also contends that enforcement of the 101% interest rate would violate the public policy underlying New York's criminal usury law, which makes interest rates exceeding 25% unenforceable for debts of less than $2.5 million.  Plaintiffs argue that since that law does not apply to these cases, where the amounts of unpaid principal held by plaintiffs range from $4.1 million to over $115 million, the relevant public policy also does not apply.  Moreover, plaintiffs note that public policy actually supports enforcement of the interest rate, both because plaintiffs justifiably relied on the terms of the

- 11 -

FRANs and because courts should enforce contractual provisions designed to protect creditors against high-risk borrowers.

There is no dispute that contracts contrary to public policy are unenforceable. See, e.g., Szerdahelyi v. Harris, 67 N.Y.2d 42, 48 (1986). However, New York's usury law does not apply to offerings this large. As plaintiffs note, this is presumably because the courts and legislature believe that parties to a financial transaction over $2.5 million can determine for themselves what interest rate is appropriate. See In re Venture Mortgage Fund, L.P., 282 F.3d 185, 189 (2d Cir. 2002). There is therefore no public policy that would be violated by an enforcement of the terms of the FRANs.

## **Statutory Interest**

Plaintiffs claim that they are entitled to collect statutory prejudgment interest, at a rate of 9% per year, on the unpaid interest accruing under the contract. In opposing this motion, the Republic has not objected to the accrual of statutory prejudgment interest on unpaid contract interest before acceleration, or where acceleration never occurred. However, the Republic does object to an award of post-acceleration statutory interest.

Based on declarations submitted by plaintiffs with their reply briefs, it appears that only one of these nine cases involves FRANs that were accelerated. That case, No. 05-cv-2434, was brought by NML Capital. The plaintiffs in the FFI Fund case, No. 05-cv-3328, state that

- 12 -

although they had attempted to accelerate the FRANs in their case, the Republic has previously argued that the acceleration was invalid.  The remaining plaintiffs state that their FRANs were not accelerated.  The Republic does not contest these statements.  Thus, this issue only affects case 05-cv-2434.

New York law provides for an award of prejudgment statutory interest in breach-of-contract actions, and allows this statutory interest to be awarded on both the principal and interest due under the contract.  N.Y. C.P.L.R. §§ 5001(a), 5004; Spodek v. Park Prop. Dev. Assocs., 96 N.Y.2d 577, 581 (2001).  Once payments are accelerated, however, statutory interest is no longer available because the "entire principal is immediately due" and "interest payments that would have been due in the future are no longer due."  Capital Ventures Int'l v. Republic of Arg. ("CVI"), 552 F.3d 289, 296-97 (2d Cir. 2009).  This rule can be set aside only where it is shown "that the parties intended to displace the normal meaning of acceleration with a concept of acceleration that allows interest to continue to come due after the principal is accelerated."  Id.

This issue was previously addressed in another bondholder action against the Republic.  In that case, the Second Circuit upheld this court's ruling that the plaintiffs were not entitled to post-acceleration statutory interest.  CVI, 552 F.3d at 296-97.  Specifically, the court noted that language in the Fiscal Agency Agreement stating that the Republic would "'pay interest' on the principal 'until the principal . . . is paid'" was

- 13 -

insufficient "to alter the traditional concept of acceleration." Id.  For the same reason, the language in the FRAN Global Security certificate stating that contractual interest is due "until the principal hereof is paid" is not sufficient to entitle NML to post-acceleration statutory interest.

The court concludes that there is no right to receive statutory interest on unpaid contract interest accruing after acceleration. However, plaintiffs are not precluded from seeking statutory interest on unpaid contract interest accruing before acceleration, or where acceleration never occurred.

### Conclusion

Plaintiffs' motion for summary judgment is granted in part and denied in part.  Plaintiffs are entitled to receive contractual interest at the rate calculated according to the FRANs, which is approved by the court as described above.  However, there is no entitlement to receive statutory interest on unpaid contract interest accruing after acceleration.

SO ORDERED.

Dated:  New York, New York
        March 18, 2009

Thomas P. Griesa
U.S.D.J.

- 14 -